NEVADA DEPARTMENT OF PRISONS, GEORGE SUMNER, DIRECTOR, Appellant, v. WAYNE L. BOWEN, Respondent.

No. 17395

November 20, 1987                    745 P.2d 697

*Brian McKay*, Attorney General and *Arthur G. Noxon*, Deputy Attorney General, Carson City, for Appellant.

*Terri Steik Roeser*, State Public Defender and *Michael K. Powell*, Chief Appellate Deputy State Public Defender, Carson City, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court granting respondent's post-conviction petition for a writ of habeas corpus,

---

[3]In light of this order, we deny Kelly's request for attorney's fees and costs.

and ordering respondent's immediate release from prison. We affirm.

The facts are not disputed. On June 29, 1979, respondent was convicted of one count of robbery with the use of a deadly weapon. Respondent was sentenced to two consecutive seven-year prison terms; seven years for the robbery and seven years for the use of a deadly weapon. *See* NRS 200.380; NRS 193.165. The State Board Parole Commissioners ("parole board") treated respondent's sentences as two separate seven-year terms. Therefore, respondent was granted an institutional parole from his first seven-year sentence to his second seven-year sentence on May 27, 1980. In early 1981, pursuant to Director, Prisons v. Biffath, 97 Nev. 18, 621 P.2d 1113 (1981), prison officials recalculated the sentences of all prisoners serving consecutive sentences for using a deadly weapon during the commission of a crime to reflect this court's opinion that the primary sentence for an offense and the enhancement sentence for the use of a deadly weapon must be treated as a single sentence for purposes of computing parole eligibility. Respondent's sentence was recomputed at that time, and respondent was so informed. Thereafter, the parole board and the prison treated respondent's two consecutive sentences as a single term of imprisonment for all purposes. It is stipulated, however, that the parole board took no official action to revoke the institutional parole granted to respondent on May 27, 1980. Instead, the parole board and the department of prisons simply ignored the institutional parole as a nullity.

On February 19, 1986, respondent petitioned the district court for a writ of habeas corpus, contending that his sentence had finally expired on May 29, 1985. The district court, reasoning that the parole board was the only entity that could revoke a parole, concluded that respondent's parole was effective until formally revoked. Therefore, the district court granted the petition on the sole ground that the parole board had not taken any official action to revoke respondent's institutional parole.

The state contends that the district court erred in concluding that official action on the part of the parole board was necessary to revoke appellant's institutional parole. According to the state, the opinions of this court on which the parole board and the department of prisons relied in ignoring respondent's institutional parole rendered his initial institutional parole void as a matter of law, and no action on the part of the parole board was required to revoke respondent's institutional parole. Because we have determined that the decision of the district court must be affirmed on other grounds, we decline to address the state's contention at this time.

NRS 193.165 (emphasis added) provides in relevant part as follows:

1. Any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by imprisonment in the state prison *for a term equal to and in addition to the term* of imprisonment prescribed by statute for such crime. *The sentence prescribed by this section shall run consecutively with the sentence prescribed by statute for such crime.*

2. *This section does not create any separate offense but provides an additional penalty for the primary offense,* whose imposition is contingent upon the finding of the prescribed fact.

In Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975), this court upheld the constitutionality of NRS 193.165 against attacks based on double jeopardy and vagueness. Specifically, this court concluded that the enhancement sentence for the use of a deadly weapon in the commission of a crime constituted an additional penalty for the primary offense rather than a separate offense. Therefore, this court perceived no conflict between the penalty imposed by NRS 193.165 and the double jeopardy clause of the United States Constitution. This court also held that NRS 193.165 was sufficiently clear and definite to withstand constitutional scrutiny under the vagueness doctrine. *Id.* at 762, 542 P.2d at 1400. In Raby v. State, 92 Nev. 30, 544 P.2d 895 (1976), this court, relying on *Woofter,* vacated five of Raby's ten convictions that were improperly based on Raby's use of a firearm in the commission of five robberies. This court held that, although Raby's sentences for the five robberies could be enhanced for the use of the dangerous weapon pursuant to NRS 193.165, the enhancement sentences did not constitute separate offenses that could form the bases of separate convictions. We now reaffirm our holdings in *Woofter* and *Raby.*[1]

In Biffath v. Warden, 95 Nev. 260, 593 P.2d 51 (1979) (*Biffath I*), a prisoner relied on *Woofter* to support his contention that a primary sentence and an enhanced sentence must be treated as one sentence for purposes of computing statutory good-time credits. In deciding the appeal, this court noted that read literally, "NRS 193.165(1) purports to prescribe a separate sentence for use of a firearm in the commission of a crime. . . ." *Id.* at 263 n. 3, 593 P.2d at 52. However, this court was concerned that, "if literally construed, such provision [of NRS 193.165(1)] *would*

---

[1]In dicta in *Woofter,* this court stated: "It is also a fundamental concept expressed in criminal statutes providing a single sentence of imprisonment for each distinct crime that a defendant may not be punished more than once for the same offense." *Id.* at 758, 542 P.2d at 1397. To the extent that this language may be read to be inconsistent with this opinion, it is expressly disapproved.

*contravene fundamental double jeopardy guarantees against multiple punishments for the same offense."* *Id.* (emphasis added). This fundamental conception of the requirements of the double jeopardy clause prompted this court to ignore the plain language of NRS 193.165, and to conclude that the primary sentence and enhancement sentence must be treated as a single sentence for purposes of awarding good-time credits. In Director, Prisons v. Biffath, 97 Nev. 18, 621 P.2d 1113 (1981) (*Biffath II*), relying on the same reasoning, this court held that a primary sentence and an enhancement sentence must be treated as one sentence for purposes of computing eligibility for parole.[2] Finally, in Kreidel v. State, 100 Nev. 220, 222, 678 P.2d 1157, 1158 (1984), this court reaffirmed the decision in *Biffath II,* and held that *Biffath II* should be applied retroactively. The state and this court have since treated the primary and enhancement sentences as one continuous sentence for all purposes.[3]

In Missouri v. Hunter, 459 U.S. 359 (1983), the United States Supreme Court held that the double jeopardy clause of the United States Constitution does not preclude a state legislature from imposing cumulative punishments for a single offense. The Court stated: "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366. This court specifically recognized and followed the holding in *Hunter* first in Koza v. State,

---

[2]The result of treating two consecutive sentences as one continuous sentence benefits a minority of prisoners who have no prospect of being paroled. This is because more good-time credits may be earned in the fifth and subsequent years of a sentence than in the first four years. *See* NRS 209.443. For the vast majority of prisoners, however, the result is a significantly longer time behind bars, because prisoners serving multiple consecutive sentences may be paroled from a prior sentence to a subsequent sentence, thus satisfying both sentences concurrently.

[3]Respondent notes that this court's opinions have held that a primary and enhancement sentence must be treated as one sentence for purposes of awarding good-time credits and computing parole eligibility only. Respondent correctly argues that no opinion of this court has yet determined that the primary and enhancement sentences must be treated as one sentence for purposes of determining the date the sentence or sentences expire. Respondent suggests that we could affirm the ruling of the district court by holding that the primary and enhancement sentences must be treated as one continuous sentence for purposes of awarding good-time credits and computing parole eligibility, but as two separate sentences for purposes of determining the date the sentences expire. We see no logical reason for treating an enhanced sentence under NRS 193.165 differently in the context of computing the final expiration date of a sentence than we did in the *Biffath* decisions, in the context of parole eligibility or the awarding of good-time credits. Not only would such a holding be inconsistent with our prior opinions, it would impose an unreasonable administrative burden on prison officials. We therefore reject this suggestion.

100 Nev. 245, 681 P.2d 44 (1984), and again in Talancon v. State, 102 Nev. 294, 721 P.2d 764 (1986). Thus, the basis for this court's decisions in *Biffath I, Biffath II* and *Kreidel, i.e.*, that the double jeopardy clause precluded the imposition of multiple sentences for a single offense, was incorrect.

As noted above, NRS 193.165 clearly evidences a legislative intent to impose separate penalties for a primary offense and for the use of a deadly weapon in the commission of the offense. The statute imposes a separate term of imprisonment "equal to and in addition to" the term of imprisonment imposed for the primary offense. This separate prison term must be served consecutively to the term of imprisonment imposed for the primary offense, and the legislature expressly declared that NRS 193.165(1) "provides an additional penalty for the primary offense." NRS 193.165(2). When the intention of the legislature is clear, it is the duty of this court to give effect to such intention and to construe the language of the statute so as to give it force and not nullify its manifest purpose. *See* Hughes Properties v. State of Nevada, 100 Nev. 295, 680 P.2d 970 (1984); Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975). We conclude, therefore, that the penalty for a primary offense and the enhancement penalty imposed pursuant to NRS 193.165 are separate and distinct, and the consecutive sentences imposed must be treated as separate sentences for all purposes. Accordingly, we hereby overrule *Biffath I, Biffath II* and *Kreidel,* and we affirm the decision of the district court.[4]

---

[4]We note that, pursuant to our decision in *Biffath II,* the prison officials and parole board have been treating the primary sentence and the enhanced sentence as one continuous sentence. Therefore, prisoners who have had their sentences enhanced pursuant to NRS 193.165 have not been granted institutional paroles. The result of converting these prisoners' sentences from a single sentence to separate consecutive sentences pursuant to this opinion might be to lengthen the actual time these prisoners will spend in prison because they did not receive the benefit of an institutional parole which would have allowed them to serve the bulk of their sentences concurrently. Because this opinion is not foreseeable based on our prior opinions, we conclude that it would be unfair to apply this decision retroactively to the detriment of any prisoner. Accordingly, this opinion shall be applied retroactively to the extent possible, but in no case shall this opinion be applied to the detriment of any prisoner sentenced before the date hereof.