**Frederick Glenn LAND, Plaintiff,**

v.

**Erlton LAWRENCE, Associate Warden of Programs; Franklin Master, Prison Physician and Psychiatrist, Defendants.**

**No. CV–S–92–625–PMP (RLH).**

United States District Court,
D. Nevada.

March 4, 1993.

Frederick Glenn Land in pro. per.

Robert W. Linder, Deputy Atty. Gen., Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for

Summary Judgment (# 12), filed October 19, 1992. Plaintiff Frederick G. Land ("Land") filed an Opposition and Cross–Motion for Summary Judgment (# 13) on November 5, 1992. Land filed a Second Amended Complaint, apparently without leave of Court, on November 9, 1992 (# 14). On November 24, 1992, Defendants filed a Motion to Dismiss the Second Amended Complaint and an Opposition to Land's Cross–Motion for Summary Judgment (# 15). Finally, on December 9, 1992, Land filed an Opposition to Defendants' Motion to Dismiss the Second Amended Complaint and a Reply to Defendants' Opposition to Plaintiff's Cross–Motion for Summary Judgment (# 16).

In 1985, Plaintiff Land pled guilty to and was convicted of attempted sexual assault. He was sentenced to three consecutive twenty year sentences. In July 1992, Land was being considered for parole. As part of this consideration, he was brought before a board, commonly referred to as the "psyche panel." This panel, acting pursuant to N.R.S. § 200.375, examined Land in order to make a determination as to his suitability for parole. This panel declined to certify that Land was not a menace to the health and safety of society.

At the time Land was convicted in 1985, N.R.S. § 200.375 provided that:

1. No person convicted of sexual assault may be paroled unless a board consisting of:

    (a) The administrator of the mental hygiene retardation division of the department of human resources;

    (b) The director of the department of prisons; and

    (c) A physician authorized to practice medicine in Nevada who is also a qualified psychiatrist,

    certifies that the person so convicted was under observation while confined in an institution of the department of prisons and is not a menace to the health, safety, or morals of others.

2. For the purposes of this section, the administrator and the directory may each designate a person to represent him on the board.

Effective October 1991, this section was amended to include, among other changes, that "*A person* convicted of sexual *or attempted sexual assault may not* be paroled unless . . ."

On September 11, Land filed a § 1983 complaint in this Court (# 1). Land seeks damages and an injunction prohibiting Defendants from bringing him before this psyche panel. His complaint alleges that the state engaged in an ex post facto application of N.R.S. § 200.375 in violation of the United States and Nevada Constitutions, when it applied the amended version of the statute and required that he be brought before the psyche panel.

■ The Supreme Court recently reaffirmed a 1925 decision that summarized the meaning of the Ex Post Facto clause:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as Ex Post Facto.

*Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (cited in *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)). The *Collins* Court also noted that merely by arguing that a change in a law is "procedural" does not immunize that law from scrutiny under the Ex Post Facto clause.

It is uncontested in this case that prison authorities have applied N.R.S. § 200.375 retroactively. Land's § 1983 action, therefore, raises only the issue of whether application of the amended statute makes his punishment more burdensome.

Land argues that application of the amended statute to his case has increased his punishment in two ways. First, he alleges that he suffered mental and emotional stress, accompanied by physical symptoms, as a result of being brought before the psyche panel. Second, he argues that the amended statute

completely removes discretion from the Parole Board as to whether to grant him parole. He notes that as a result of the amendment to the statute, the Parole Board has no authority in attempted sexual assault cases to grant parole without a favorable recommendation from the psyche panel.

■ With respect to Land's first argument, although this Court expresses no opinion as to the validity of these claims, it is clear that there is no violation of the Ex Post Facto clause without a showing that the new statute increased the punishment for a crime after its commission. *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). There is no basis for believing that any actions taken by the psyche panel that Land alleges produced mental and emotional damage constituted a "punishment" given to Land for his conviction of attempted sexual abuse.

Land next contends that making him face a psyche panel, not required by Nevada law in 1985, constitutes an additional punishment prohibited by the Ex Post Facto clause. Land seems to argue that requiring him to "jump through" the psyche panel's "hoop", in addition to the Parole Board's "hoop," makes it more difficult for him to be paroled.

■ The amended statute requires the psyche panel to determine whether the person convicted would be "a menace to the health, safety, or morals of others" if paroled.

See § 200.375(1). Land admits that prior to the amendment of this statute, the Parole Board always had the power to consider whether release of that offender would adversely affect the welfare of society. Where a law merely alters the method of imposing a penalty and does not change the "quantum of punishment," no Ex Post Facto violation has occurred. *See Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977) (upholding the retroactive application of a change in the role of the judge and the jury in imposing the death penalty).

■ This Court finds that by creating a special panel to make a determination of whether a person convicted of sexual or attempted sexual assault would be a menace to society if paroled, the Nevada Legislature did not create any new power to be exercised in the determination of parole. The effect of the new law is to create a specialized body consisting partly of medical professionals, and to give that body authority to make a determination the Parole Board was already empowered to make. Thus, the new law does not "increase the punishment for which [Land] is eligible" as a result of his conviction. *See Collins,* 497 U.S. at 44, 110 S.Ct. at 2720. *See also Connor v. Estelle,* 981 F.2d 1032 (9th Cir.1992). Inasmuch as it states a federal cause of action for an Ex Post Facto violation, Land's complaint must be dismissed with prejudice.[1]

---

1. *Connor v. Estelle* was decided in 1992, two years after the Supreme Court decided *Collins.* Connor was convicted of murder in a California state court. The court sentenced him to life imprisonment under California's Indeterminate Sentencing Law ("ISL"). Sometime after he was sentenced, California repealed the ISL and enacted the Determinate Sentencing Law ("DSL"). Connor was thereafter considered for parole under the DSL's guidelines, and was denied release. He challenged the application of the DSL to his case as a violation of the Ex Post Facto clause.

The Ninth Circuit held that application of the DSL to Connor's sentence did not violate the Ex Post Facto clause. It noted that both the DSL and the ISL required the consideration of the same factors. It concluded that because both guidelines considered the same factors in determining whether parole was warranted, applying "the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not disadvan-

tage them, and therefore does not violate" the Ex Post Facto clause.

This Court is somewhat confused by the analysis in *Connor,* in light of the Supreme Court's *Collins* decision in which the Court overruled *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). *Collins,* 497 U.S. at 50, 110 S.Ct. at 2723. The decisions are, however, reconcilable. *Kring* was a case that defined an Ex Post Facto law, *inter alia,* as one that "alters the situation of a party to his disadvantage." *Id.* 107 U.S. at 228–29, 2 S.Ct. at 449–50. The Court in *Collins* noted that this language in *Kring* expanded the definition of an Ex Post Facto law from previous Court cases, most notably *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798). The *Collins* Court disagreed with *Kring's* reading of the Ex Post Facto clause, and concluded that *Kring's* expanded definition "depart[ed] from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases." *Collins,* 497 U.S. at 50, 110 S.Ct. at 2723. Thus, *Collins* seems to

■ If a federal claim against a party is dismissed before trial, the pendent state law claims should also be dismissed. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency*, 733 F.2d 646 (9th Cir.1984). All of the federal claims sought by Plaintiff under the present Complaint have been dismissed. As such, the remaining state law claims presented should also be dismissed without prejudice. *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490, 492 (1984).

IT IS THEREFORE ORDERED THAT Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (# 15) is hereby granted.

IT IS FURTHER ORDERED THAT Plaintiff's Federal Cause of Action in his Second Amended Complaint (# 14) is hereby dismissed with prejudice and his State Causes of Action are dismissed *without* prejudice.

IT IS FURTHER ORDERED THAT Plaintiff's Cross–Motion for Summary Judgment (# 13) is hereby denied.

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (# 12) is hereby denied as moot.

make clear that a retroactive application of a law to a person's disadvantage, by itself, will not violate the Ex Post Facto clause. *See Collins*, 497 U.S. at 49, 50, 110 S.Ct. at 2722, 2723 ("The Court's departure from *Calder*'s explanation of the original understanding of the Ex Post Facto clause was, we think, unjustified").

Nevertheless, the fact noted by the Ninth Circuit in *Connor* that the DSL and the ISL require consideration of the same criteria is important for Ex Post Facto analysis, regardless of whether one considers if the defendant was disadvantaged. Because the same factors were considered by the ISL and the DSL, no change in the burden of punishment occurred. This reasoning applies to the case at bar as well, where the Parole Board was already empowered to make the same findings as the psyche panel.